UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

JUAN ABREU, *et al.*,
        *Petitioners*,

v.

JEFFREY CRAWFORD, et al.,
        *Respondents.*

No. 1:24-cv-01782-MSN-WBP

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on the Amended Petition for a Writ of Habeas Corpus (ECF 2) brought by Juan Abreu, Juan Moreno Colindres, and Justin Sawyer ("Petitioners"). All three Petitioners allege that their prolonged detention in the custody of United States Immigration and Customs Enforcement ("ICE") without individualized bond hearings violates their Fifth Amendment Due Process rights. Respondent-defendants Liana Castano, in her official capacity as the Field Office Director of the ICE Enforcement and Removal Operations ("ERO") Washington Field Office; Alejandro Mayorkas, in his official capacity as the Secretary of the U.S. Department of Homeland Security ("DHS"); and Merrick Garland, in his official capacity as the Attorney General of the United States oppose the Petition ("Federal Respondents").[1] ECF 13. The Federal Respondents have also moved to sever Petitioners' habeas claims into separate actions. ECF 11. For the following reasons, the Petition is GRANTED, and Respondents will be ordered to hold

---

[1] The Petition also named as a respondent Jeffrey Crawford, in his official capacity as the Director of the Farmville Detention Center (where Mr. Abreu and Mr. Moreno Colindres are currently detained) and Paul Perry, in his official capacity as the Superintendent of Caroline Detention Facility (where Mr. Sawyer is currently detained). In Crawford's response, he claims he is a "nominal respondent" who does not "take[] any position with respect to the merits of … the Petition." ECF 9 ¶ 9. "To the extent that [he] is required to take a position with respect to the merits of the First Amended Petition, Crawford joins in, adopts, and incorporates by reference any forthcoming response filed by [Federal] Respondents Paul Perry, Liana Castano, Alejandro Mayorkas, and/or Merrick Garland." *Id.* ¶ 10. Perry failed to respond to the Petition.

individualized bond hearings for each Petitioner within fourteen (14) days. Federal Respondents' motion to sever is DENIED.

## I. BACKGROUND

### A. Juan Abreu

Petitioner Juan Abreu is a native of the Dominican Republic who came to the United States in 1994, at age twenty-four. ECF 2 ¶ 24. Shortly after coming to the United States, Mr. Abreu became a Lawful Permanent Resident ("LPR"). *Id.* On April 22, 2004, Mr. Abreu was arrested (along with thirty-five others) for conspiracy to import drugs. *Id.* ¶ 26. Mr. Abreu was eventually released on bail with an ankle monitor in 2010, after serving five-and-a-half years in prison. *Id.* In May 2015, ICE arrested Mr. Abreu and issued a Notice to Appear ("NTA"), charging him as removable from the United States under 8 U.S.C. § 1227(a)(2)(B)(i) and § 1227(a)(2)(A)(iii) based on having committed an aggravated felony offense. *Id.* ¶ 27. Mr. Abreu moved for release on bond, but the Immigration Judge ("IJ") ruled that he was subject to mandatory detention (due to his criminal conviction). *Id.* After Mr. Abreu was detained for more than six months, and following the Third Circuit's ruling in *Diop v. ICE/Homeland Sec.*, 656 F.3d 221, 233 (3d Cir. 2011),[2] Mr. Abreu again sought release on bond, which the IJ granted on February 17, 2016. *Id.*

On April 6, 2020, Mr. Abreu was arrested again following an incident in which his neighbor, who was armed, attacked him outside of his home. *Id.* ¶ 28. Mr. Abreu ultimately wrestled the gun from his neighbor and shot it into the air to empty it of munition in self-defense. *Id.* Although no one was injured, Mr. Abreu was charged with unlawful possession of a weapon as an individual with a felony conviction and pled guilty to one count under 18 U.S.C. § 922(g)(1).

---

[2] The Third Circuit found that "when detention becomes unreasonable, the Due Process Clause demands a hearing, at which the Government bears the burden of proving that continued detention is necessary to fulfill the purposes of the detention statute."). *Diop*, 656 F.3d at 233.

*Id.* He was sentenced to thirty months in prison on September 22, 2021, and was subsequently transferred to ICE custody for removal proceedings. *Id.* ¶¶ 28-29.

Mr. Abreu sought relief from removal under the Convention Against Torture ("CAT"), arguing that he would more likely than not be tortured if he were removed to the Dominican Republic. *Id.* ¶ 29. In an oral decision, the IJ denied relief and Mr. Abreu was transferred to federal criminal custody to serve his sentence. *Id.* Mr. Abreu appealed the IJ's decision to the BIA, who issued a decision dismissing his appeal on December 31, 2020. *Id.* ¶ 30. Mr. Abreu then submitted a *pro se* Petition for Review to the Third Circuit Court of Appeals. *Id.* ¶ 31. The Third Circuit stayed his removal, appointed Mr. Abreu an attorney to represent him on appeal, and remanded the case to the BIA, where the case is currently pending (it took the BIA nine months to issue a briefing schedule on remand). *Id.*

Mr. Abreu was released from criminal custody for good behavior after serving twenty-four months for his gun possession conviction. *Id.* ¶ 32. He was subsequently transferred to immigration custody where he was first detained at Moshannon Valley Processing Center ("MVPC") in Phillipsburg, Pennsylvania, and later transferred to Farmville Detention Center in Farmville, Virginia ("Farmville"), where he has been detained for fourteen months (since August 26, 2023). *Id.* ¶¶ 32-33. While at MVPC, Mr. Abreu developed a fungal infection in his chest which has subsequently spread to his face and neck. *Id.* ¶ 36. Mr. Abreu has sought care for the same infection at Farmville, but claims he has not been appropriately treated, causing his condition to worsen. *Id.* ¶ 40. If released, Mr. Abreu claims that he will return to live with his U.S. citizen daughter in Allentown, Pennsylvania. *Id.* ¶ 42. Mr. Abreu has been detained for more than **twenty-five consecutive months** in immigration custody without a bond hearing. *See id.* ¶ 33.

B.     **Juan Moreno Colindres**

Petitioner Juan Moreno Colindres is a native of Nicaragua who came to the United States more than twenty years ago. *Id.* ¶ 43. Mr. Moreno Colindres, who is now 70 years old, is married to a U.S. citizen and is in the process of applying for LPR status. *Id.* ¶ 45. U.S. Citizenship and Immigration Services ("USCIS") approved Mr. Moreno Colindres' I-130 petition on December 2018 and his I-601A waiver application in March 2023. *Id.* In February 2023, Mr. Moreno Colindres was convicted of indecent exposure based on a 2020 incident in which he chatted online with an undercover law enforcement officer posing as a minor. *Id.* ¶ 46. In May 2023, Mr. Moreno Colindres was sentenced to four years of incarceration, but his sentence was suspended and he was released with three years of probation. *Id.* ICE then arrested Mr. Moreno Colindres, detained him at Caroline Detention Facility in Bowling Green, Virginia ("Caroline"), and issued him an I-831, Final Administrative Removal Order ("FARO"), ordering him to be removed without immigration proceedings. *Id.* ¶ 47. Mr. Moreno Colindres subsequently sought a Reasonable Fear Interview ("RFI"), but USCIS found that he had not met his burden of demonstrating fear upon return to Nicaragua. *Id.* In July 2023, an IJ vacated USCIS' negative RFI finding and ordered ICE to issue a NTA for full removal proceedings. *Id.* ¶ 48. ICE waited until October 2023 to issue a NTA, during which Mr. Moreno Colindres remained detained. *Id.*

On February 5, 2024, the IJ granted Mr. Moreno Colindres CAT relief, but ICE appealed. *Id.* ¶ 50. In April 2024, Mr. Moreno Colindres' counsel submitted a release request under ICE Directive 16004.1, which requires ICE to release noncitizens granted fear-based protection (such as under CAT) unless there are "exceptional circumstances" justifying continued detention. *See Rodriguez Guerra v. Perry*, No. 1:23-cv-1151, ECF 87 (E.D. Va. Oct. 16, 2024) (approving settlement agreement requiring ICE to review custody of noncitizens granted fear-based

4

protection). *Id.* ¶ 51. ICE denied the release request on the grounds that Mr. Moreno Colindres was subject to mandatory detention. *Id*. The BIA sustained ICE's appeal and ordered Mr. Moreno Colindres removed, but the Fourth Circuit issued a stay of removal and remanded the case to the BIA. *Id.* ¶¶ 52-53. Mr. Moreno Colindres was transferred to Farmville in July 2024 where he remains detained today. *Id.* ¶ 54. Mr. Moreno Colindres has suffered medical issues during his detention which ICE doctors have described as "pre-heart attacks." *Id.* ¶ 55. He also suffers from hypertension, asthma, prediabetes, and arthritis. *Id*. If released, Mr. Moreno Colindres claims he would return to Adelphi, Maryland and live with his U.S. citizen wife. *Id.* ¶ 58. Mr. Moreno Colindres has been detained for approximately ***seventeen months*** in immigration custody without a bond hearing. *Id.* ¶ 54.

    **C.**    **Justin Sawyer**

Petitioner Justin Sawyer is a native of the Bahamas who fled to the United States by boat in 2019. *Id.* ¶¶ 59, 61. Upon arrival, Mr. Sawyer was arrested and convicted of smuggling noncitizens into the country. *Id.* ¶ 61. Mr. Sawyer served a two-year sentence and was then transferred to ICE custody in 2021, where he was paroled a few months later. *Id*. Upon release, while living in Florida, Mr. Sawyer married a U.S. citizen and now cares for her four children. *Id.* ¶ 62.

In 2022, Mr. Sawyer was arrested for DUI and possession of a firearm. *Id.* ¶ 63. He spent a year in prison, after which he transferred to ICE custody at Caroline in September 2023. *Id.* at ¶ 63. In January 2024, an IJ found Mr. Sawyer "incompetent to represent himself," given his diagnosis of bipolar disorder, schizophrenia, borderline personality disorder, and posttraumatic stress disorder, and appointed an attorney from Amica Center to represent him. *Id.* ¶ 64. In

September 2024, the IJ granted Mr. Sawyer CAT protection, but ICE appealed. *Id.* ¶ 65. The case remains pending at the BIA, awaiting a briefing schedule. *Id.*

ICE conducted a custody review of Mr. Sawyer under ICE Directive 16004.1, after he was granted CAT protection. *Id.* ¶ 66. But ICE continued his detention on the grounds that he was subject to mandatory detention because of his criminal convictions. *Id.* Mr. Sawyer has been detained for approximately ***thirteen months*** in immigration custody without a bond hearing (and ninety of those days he has spent in solitary confinement at Caroline). *Id.* ¶ 67.

**II.    ANALYSIS**

    **A.    Statutory Framework: Detention Under § 1225 or § 1226**

There is a statutory distinction between noncitizens who are detained ***upon arrival*** into the United States and those who are detained after they have ***already entered*** the country, legally or otherwise. An alien who "arrives in the United States," or is "present" in this county but "has not been admitted," is considered an "applicant for admission" under 8 U.S.C. § 1225(a)(1). The Government may detain those "applicants for admission" under §§ 1225(b)(1) and (b)(2). *See Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018). Such "arriving aliens" are subject to expedited removal proceedings "without further hearing or review unless the alien indicates either an intention to apply for asylum … or a fear of persecution." 8 U.S.C. § 1225(b)(1)(A)(i). If an applicant for admission under § 1225 is temporality released on parole "for urgent humanitarian reasons or significant public benefit," § 1182(d)(5)(A), that does not necessarily change the alien's status. *See Mbalivoto v. Holt*, 527 F. Supp. 3d 838, 844 (E.D. Va. 2020). That is, after the parole purpose has been served, "the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." § 1182(d)(5)(A). The Government may

also, under 8 U.S.C. § 1226, detain "certain aliens *already in the country* pending the outcome of removal proceedings." *Jennings*, 583 U.S. at 289 (emphasis added). Thus, § 1225 governs the former category of "arriving aliens" or those "coming or attempting to come into the United States," while "§ 1226 generally governs the process of arresting and detaining aliens present in the United States pending their removal." *Rodriguez v. Perry*, 2024 WL 4024047, at *3 (E.D. Va. Sept. 3, 2024).

The parties do not dispute that both Mr. Abreu and Mr. Moreno Colindres are currently detained pursuant to § 1226(c). ECF 13 at 1. But Federal Respondents argue that Mr. Sawyer is mandatorily detained under § 1225(b) as an "arriving noncitizen," and the constitutionality of his detention is therefore subject to a different analysis. *Id.*; ECF 17 at 3. Federal Respondents point to the declaration of James Mullan, an acting Assistant Field Office Director for ICE who reviewed Mr. Sawyer's matter, to support their contention that Mr. Sawyer is detained under § 1225, not § 1226. *See* ECF 13-3 ¶ 6 (Mr. Sawyer is "inadmissible to the United States under INA 212(a)(7)(A)(i)(I) for lacking documentation to lawfully enter."). But curiously, when ICE conducted its custody review of Mr. Sawyer pursuant to *Rodriguez Guerra v. Perry*, 1:23-cv-1151, it checked the box for continuing Mr. Sawyer's detention because he is "subject to mandatory detention under INA 236(c)" (which is the corollary to § 1226(c)). *See* ECF 2-3 at 34. The Government provides no explanation for this contradiction, but simply argues that because Mr. Sawyer never obtained status following his initial detention under § 1225, he remains an "arriving noncitizen" under § 1225. ECF 17 at 3.

This Court recognizes that Mr. Sawyer was initially detained pursuant to § 1225 and that his subsequent parole did not change his status. *See Mbalivoto*, 527 F. Supp. 3d at 844 ("Such parole, however, 'shall not be regarded as an admission of the alien.'" (quoting § 1182(d)(5)(A)).

7

In *Rodriguez v. Perry*, Judge Brinkema reviewed the status of a noncitizen who was initially detained under § 1225(b), but was subsequently released and obtained special immigrant juvenile ("SIJ") status. 2024 WL 4024047 at *3. When the noncitizen was later arrested by ICE, his SIJ status "converted him from being an arriving alien to an alien present in the United States," and he was therefore considered detained under § 1226. *Id.* But here, Mr. Sawyer obtained no legal status after his initial detention under § 1225. Thus, even though Mr. Sawyer was paroled from ICE custody and later apprehended on criminal charges, he remains detained pursuant to § 1225.[3] Notwithstanding Mr. Sawyer's status as an "arriving alien" under § 1225, his prolonged detention without bond must undergo the same analysis as the other two Petitioners. *See Mbalivoto*, 527 F. Supp. 3d at 850.

    **B.**    **Due Process**

Under the Fifth Amendment, no person shall "be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. This protection extends to "aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (internal citations omitted). The Supreme Court has recognized that "at some point immigration detention becomes unreasonable and therefore unconstitutional." *Mbalivoto*, 527 F. Supp. 3d at 847 (citing *Zadvydas*, 533 U.S. at 701; *Demore v. Kim*, 538 U.S. 510 527-30 (2003)). In *Zadvydas*, the Supreme Court considered the prolonged detention of an alien under 8 U.S.C. § 1231(a)(6), which allows the Government to continue detaining an alien after a final removal order is entered (and even after the ninety-day removal period). 533 U.S. at 683. The Court ultimately found that in that context, detention becomes constitutionally suspect when it exceeds six months. *Id.* at 701. In *Demore*, the Supreme Court considered the detention of an alien under § 1226(c).

---

[3] This Court finds that the ICE Custody Review Decision likely erred in failing to specify that Mr. Sawyer is detained under § 1225 (as there is no box appropriate for that determination).

538 U.S. at 513-14. Although the Court ultimately found that the alien's detention (which lasted six months, partially due to the alien's requested continuance) did not violate Due Process, the Court recognized that detention under § 1226(c) usually "lasts roughly [between] a month and a half … and about five months," and has "a definite termination point." 538 U.S. at 529-530.

Following the Supreme Court's recognition in both *Zadvydas* and *Demore* that the prolonged detention of aliens absent justification could violate Due Process, several district courts began ordering bond hearings for aliens detained for lengthy periods of time without one. *See Bah v. Barr*, 409 F. Supp. 3d 464, 467, 470 (E.D. Va. 2019) ("[I]t is well-established that aliens detained under § 1226 must receive bond hearings if their lengthy detentions violate Due Process."); *Mbalivoto*, 527 F. Supp. 3d at 850 & n. 12 (joining other courts in recognizing that individualized bond hearings are required for those detained under 8 U.S.C. § 1225(b) when their "continued detention … becomes unreasonable and constitutionally infirm without one").

To determine if such prolonged detention without a bond hearing violates due process, district courts apply a five-factor balancing test. *Bah*, 409 F. Supp. 3d at 471 n.9. These five factors—known now as the *Portillo* factors—are

> (1) the duration of detention, including the anticipated time to completion of the alien's removal proceedings; (2) whether the civil detention exceeds the criminal detention for the underlying offense; (3) dilatory tactics employed in bad faith by the parties or adjudicators; (4) procedural or substantive legal errors that significantly extend the duration of detention; and (5) the likelihood that the government will secure a final order of removal.

*Portillo v. Hott*, 322 F. Supp. 3d 698, 707 (E.D. Va. 2018) (internal quotations and citations omitted). The first factor is given "significant weight" due to the Supreme Court's "concerns about prolonged detention." *Bah*, 409 F. Supp. 3d at 471 n.9. Courts in this district have consistently applied the *Portillo* factors to prolonged detention under § 1226(c). *See Santos Garcia v. Garland*, No. 1:21-cv-742, 2022 WL 989019 (E.D. Va. Mar. 31, 2022); *Martinez v. Hott*, 527 F. Supp. 3d

9

824 (E.D. Va. 2021); *Deng v. Crawford*, No. 2:20-cv-199, 2020 WL 6387326 (E.D. Va. Oct. 30, 2020); *Songlin v. Crawford*, No. 3:19-cv-895, 2020 WL 5240580 (E.D. Va. Sep. 2, 2020); *Gutierrez v. Hott*, 475 F. Supp. 3d 492 (E.D. Va. 2020); *Urbina v. Barr*, No. 1:20-cv-325, 2020 WL 3002344 (E.D. Va. June 4, 2020). And this Court has applied the same *Portillo* factors to determine the constitutionality of detention under § 1225(b) as well. *See Mbalivoto*, 527 F. Supp. 3d at 850. Accordingly, this Court follows suit and analyzes each Petitioner's prolonged detention (whether detained under § 1226 or § 1225) under the *Portillo* factors.

### 1. The *Portillo* Factors

The first factor, length of detention, weighs "heavily in [each Petitioner's] favor as a prolonged and substantial burden on his liberty interest," because each Petitioner's ongoing detention far exceeds the presumptively constitutional six-month duration recognized in *Zadvydas*. *Portillo*, 322 F. Supp. 3d at 707-08. At the time the Petition was filed, Mr. Abreu had been in ICE custody for approximately twenty-five months, Mr. Moreno Colindres for approximately seventeen months, and Mr. Sawyer for approximately thirteen months. ECF 2 ¶ 72. These lengthy detentions are "significantly longer than the one-, five-, and six-month boundaries described in *Zadvydas* and *Demore*." *Portillo*, 322 F. Supp. 3d at 708. And this Court (along with others) has granted relief for petitioners who have been detained for similar periods of time. *See Gutierrez*, 475 F. Supp. 3d at 497 (twenty-three months); *Martinez*, 527 F. Supp. 3d at 836 (sixteen months); *Deng*, 2020 WL 6387010, at *19 (E.D. Va. Sept. 30, 2020) (eleven months).[4] Thus, this factor weighs in favor of all Petitioners.

---

[4] Courts in other districts agree. *Lett v. Decker*, 346 F. Supp. 3d 379, 387 (S.D.N.Y. 2018) (ten months detention unreasonable under § 1225(b)); *Perez v. Decker*, 2018 WL 3991497, at *5 (S.D.N.Y. Aug. 20, 2018) (one-year detention unreasonable under § 1225(b)); *Ly v. Hansen*, 351 F.3d 263, 270 (6th Cir. 2003) (bond hearing required after eighteen months of detention under § 1226(c)); *Tuser v. Rodriguez*, 370 F. Supp. 3d 435, 442–43 (D.N.J. 2019) (twenty months unreasonable under § 1225(b)); *Pierre v. Doll*, 350 F. Supp. 3d 327, 332 (M.D. Pa. 2018) (twenty-four months' detention unreasonable under § 1225(b)).

10

The second factor, "which compares the duration of detention in ICE custody to the length of time served on the criminal sentence," *Portillo*, 322 F. Supp. 3d at 708, weighs in favor of Mr. Moreno Colindres and is neutral for Mr. Abreu and Mr. Sawyer. Mr. Moreno Colindres' civil detention of seventeen months has far exceeded the criminal detention for his underlying offense, for which he spent no time in prison (he received a fully suspended sentence). ECF 2 ¶ 74; *see Gutierrez*, 475 F. Supp. 3d at 497 (finding that second factor "weighs heavily" in petitioner's favor where he had been "detained by ICE for more than 23 months, but he was not sentenced to jail time for any of his underlying criminal convictions").[5] Mr. Abreu has been in civil detention for over two years, which is roughly equal to his criminal sentence of twenty-four months. ECF 2 ¶ 75. And Mr. Sawyer's thirteen-month civil detention is also roughly equal to his criminal sentence of approximately a year.[6] *Id.* Thus, this factor is neutral for both Mr. Abreu and Mr. Sawyer.

As to the third factor, this Court finds that potential dilatory tactics are present for Mr. Moreno Colindres and Mr. Abreu. In Mr. Moreno Colindres' case, ICE unnecessarily delayed two months in issuing a NTA after ordered to do so by the IJ. ECF 2 ¶ 76. In Mr. Abreu's case, the BIA took nine months to set a briefing schedule after remand from the Third Circuit. *Id.* Contrary to the Federal Government's contention, these do not appear to be solely delays caused "by a party's good faith exercise of its procedural remedies … [which are] unlikely to trigger due process concerns." ECF 13 at 25 (quoting *Misquitta v. Warden Pine Prairie ICE Processing Center*, 353 F. Supp. 3d 518, 526-27 (W.D. La. 2018)). Because Respondents set forth no valid justification for these delays, the Court finds that this factor weighs in favor of Mr. Moreno Colindres and Mr.

---

[5] Federal Respondents argue that this Court must include Mr. Moreno Colindres' suspended sentence of four years when considering this factor, ECF 13 at 24, but this Court need only consider the time actually spent in criminal custody. *See Portillo*, 322 F. Supp. 3d at 708 (citing *Haughton v. Crawford*, 2016 WL 5899285, at *9 (E.D. Va. Oct. 7, 2016)).

[6] Federal Respondents urge this Court to "tak[e] [into] account all of Mr. Sawyer's convictions," ECF 13 at 25, but this "second factor is not based on the totality of a detainee's convictions, but on the underlying offense 'on which his current mandatory detention rests.'" *Deng*, 2020 WL 6387010, at *6 (quoting *Portillo*, 322 F. Supp. 3d at 708).

11

Abreu. For Mr. Sawyer, however, there is no indication of bad faith delay. Petitioners argue that "ICE not only appealed Mr. Sawyer's CAT grant but decided to keep him detained pending appeal." ECF 2 ¶ 76. But such decision-making by ICE is not indicative of "dilatory tactics employed in bad faith." *Portillo*, 322 F. Supp. 3d at 706. Accordingly, this Court finds that the third *Portillo* factor is neutral for Mr. Sawyer.

As to the fourth factor, it is not clear that there are legal errors that significantly extended the duration of Petitioners' detentions. Petitioners point to the procedural history of each case—noting that the remands and reversals at various stages indicate that the IJ and BIA committed errors at their respective stages that ultimately prolonged each Petitioner's detention. See ECF 2 ¶¶ 78, 79. But it is not clear that those alleged errors are legal errors in fact given that the cases have yet to be resolved. Accordingly, this Court finds the fourth factor is neutral and turns to the final factor.

As to the fifth and final factor, this Court finds that it is "purely speculative" to say what the BIA or Fourth Circuit will do. *Mauricio-Vazquez v. Crawford*, 2017 WL 1476349, at * 5 (E.D. Va. Apr. 24, 2017). Mr. Abreu initially appealed the IJ order, and now his case is currently pending with the BIA after being remanded. ECF 2 ¶ 31. Mr. Moreno Colindres appealed the BIA's decision and now the case is pending with the Fourth Circuit. *Id.* ¶ 53. And ICE appealed the IJ's decision granting Mr. Sawyer relief, which remains pending with the BIA. *Id.* ¶ 65. See *Santos Garcia*, 2022 WL 989019, at * 7 ("At this stage … with removal proceedings still ongoing and in light of the mixed appellate record the Court has reviewed, it is speculative to presume" how the BIA or the Fourth Circuit will rule). The Court finds that this factor stands in equipoise.

On balance, with due regard given to the first and "most important" factor, *see Haughton*, 2016 WL 5899285, at *9, this Court finds that the *Portillo* factors weigh in favor of each Petitioner.

12

Given each Petitioner's ongoing, lengthy detentions, due process mandates individualized bond hearings. This Court further finds that "the government's interest in guarding against [each Petitioner's] flight can be substantially protected even if [each Petitioner] is given an individualized bond hearing" because "a critical factor that the IJ will be forced to consider is whether [each Petitioner] is a flight risk and whether there are conditions of release that could reasonably secure his future appearance." *Portillo*, 322 F. Supp. 3d at 709.

### 2. Individualized Bond Hearing

Each Petitioner's continued detention without a bond hearing is violative of the Fifth Amendment. *See* supra Section II.B.1. Accordingly, this Court finds that each Petitioner is entitled to an individualized bond hearing. "[A]t the bond hearing, the government must demonstrate that [each Petitioner] is either a flight risk or a danger to the community by clear and convincing evidence." *Portillo*, 322 F. Supp. 3d at 709; *see also Bah*, 409 F. Supp. 3d at 472; *Mbalivoto*, 527 F. Supp. 3d at 851-52. This Court will not impose any additional procedural requirements.

### C.   Severance

This Court will not sever this Petition. A Court may "[o]n motion or on its own … on just terms, add or drop a party[,]" severing that party from an action. Fed. R. Civ. P. 21. "[A] court has virtually unfettered discretion in determining whether or not severance is appropriate." *17th Street Assocs., LLP v. Markel Int'l Ins. Co. Ltd.*, 373 F. Supp. 2d 584, 598 n.9 (E.D. Va. 2005) (internal quotation and citation omitted). Federal Respondents' motion to sever is rooted in their argument that because Petitioners are not detained under the same statutory provision, a different statutory analysis is required for each Petitioner. ECF 12 at 3. But this Court follows other courts, including ones in this very district, in concluding that prolonged detentions under both § 1226(c) and § 1226(b) can be analyzed using the *Portillo* factors. *See, e.g.*, *Mbalivoto*, 527 F. Supp. 3d at 850.

Federal Respondents also contend that they have been prejudiced by responding to all three Petitions in one response. ECF 12 at 5. But Federal Respondents thoroughly set forth their arguments as to each Petitioner in their response—including by attaching three separate declarations by Assistant Field Office Director James Mullan to describe the pertinent immigration history of each petitioner. This Court therefore finds no prejudice and no reason to sever the instant Petition.

### III. CONCLUSION

For the foregoing reasons, each Petitioner's detention has become constitutionally violative of the Due Process Clause. Each Petitioner is therefore entitled to an individualized bond hearing. Accordingly, it is hereby

ORDERED that Petitioners Juan Abreu, Juan Moreno Colindres, and Justin Sawyer's Amended Petition for a Writ of Habeas Corpus (ECF 2) be and is GRANTED; and it is further

ORDERED that Respondents provide an individualized bond hearing for each Petitioner within fourteen (14) days from the Date of this Order, at which the Government will bear the burden of proving by clear and convincing evidence that each Petitioner should not be released on bond because he poses a risk of flight or danger to the community.

**SO ORDERED.**

/s/
Michael S. Nachmanoff
United States District Judge

January 8, 2025
Alexandria, Virginia